# WALTER *v.* WALTER.

---

### EQUITY; DIVORCE AND ALIMONY.

1. After a final decree has been passed in divorce proceedings, granting a husband a decree of divorce from his wife for adultery upon his petition, and dismissing a cross-bill by the wife, which decree contains no reference to alimony, and after the expiration of the term at which it was passed and of the time within which an appeal could be taken, the husband will not be required on the petition of the wife to pay one month's alimony *pendente lite* which was due and unpaid when the final decree was passed.
2. The maxim that he who seeks the intervention of a court of equity must come in with clean hands, applies to the wife in such case.

No. 904. Submitted October 6, 1899. Decided November 8, 1899.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia, discharging a rule to show cause why the respondent should not be required to pay certain arrears of alimony accruing *pendente lite* after the passage of a final decree of divorce granted the respondent. *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellant, Johanna Walter, and appellee, John Walter, appear to have borne to each other the relation of wife and husband. On March 1, 1895, the appellant instituted the proceedings out of which the present appeal has grown by filing in the Supreme Court of the District of Columbia a petition for divorce from the appellee. On March 14, 1895, there was an allowance to her of alimony *pendente lite* to the amount of $100 a month, which, by an order of May 7, 1895, was increased to the sum of $200 a month. Subsequently the appellee answered the bill or petition of the appellant, and on September 20, 1895, filed his cross-bill or cross-petition in the cause, praying for a divorce from the bond of matrimony between him and the appellant. Much testimony seems to have been taken; and the cause came on for hearing in January of 1898. On February 7, 1898, the court rendered its decree, dismissing the appellant's petition, and allowing to the appellee on his cross-petition a divorce from the bond of matrimony between him and the appellant. There was no appeal from this decree; and it remains in full force and effect, and is now an absolute finality.

The appellee had paid the alimony allowed *pendente lite* that had accrued up to January 1, 1898; but he paid none for the month of January, 1898, and the appellant claims that she is entitled to have the sum of $200 from him for that month. A smaller sum of $27 was also claimed by her as a balance due for some previous month; but upon the appellee's showing this minor claim has been abandoned. On December 28, 1898, upwards of ten months after the rendition of the decree of divorce in favor of the husband, no steps, it seems, having been taken in the cause in the meantime, the appellant filed her petition therein for a rule on the appellee to show cause why he should not be required to pay the alleged arrears of alimony for the

month of January, and the balance referred to of a previous month. The appellee answered the petition and rule; and in his answer, while he satisfactorily disposed of the claim for this small balance, admitted that he had not paid the $200 claimed to be due for the month of January, and stated his reasons for such non-payment, the substance of which was that the decree of divorce granted to the appellee operated as a revocation and annulment of the orders for the allowance of alimony to the appellant, and that the conduct of the appellant, as disclosed by the testimony upon which the decree was based, was of so scandalous and fraudulent a character as not to entitle her to the consideration of the court.

The court regarded the reasons assigned by the appellee as sufficient, discharged the rule upon him, and dismissed the appellant's petition. And from the order of dismissal the present appeal has been taken.

*Mr. A. A. Birney* and *Mr. Edward A. Newman* for the appellant:

1. The question of jurisdiction not being raised by the pleadings or at the hearing below, the same may not be discussed at length here, but counsel will be content to refer to the following authorities in support of the jurisdiction of the court to entertain the petition and grant the relief therein prayed for. 2 Bish. on Mar., Div. & Sep., Sec. 1099; *Lyon* v. *Lyon,* 21 Conn. 185; *Hewitt* v. *Hewitt,* 1 Bland. 101; *Allen* v. *Allen,* 100 Mass. 373; *Alexander* v. *Alexander,* 13 App. D. C. 334; *Dawson* v. *Dawson,* 37 Mo. App. 207.

2. The theory upon which courts grant alimony *pendente lite* is, the marriage being admitted, that the husband is compelled by law to support and maintain his wife, whether plaintiff or defendant, until the facts in dispute are judicially ascertained and the result embraced in a final decree. If alimony *pendente lite* has become due under a decree of the court and not paid, the wife has a vested right in the

arrearages, which the court is without authority to disturb. The decree as to the arrearages takes the form of a final judgment. Its validity would not depend in any way on the result of the suit. *Sharon* v. *Sharon,* 67 Cal. 185; *In re Smith,* 122 Cal. 462; *Dinet* v. *Eigenmann,* 80 Ill. 274; *Harrison* v. *Harrison,* 20 Ala. 629|; *Alexander* v. *Alexander, supra.* In principle there is no real difference between temporary alimony and permanent. 2 Bish. Mar., Div. & Sep., Sec. 965.

3. Alimony *pendente lite,* unless vacated or modified, continues until the actual dissolution by a final decree of divorce, of the bonds of matrimony, even though the wife's guilt be then established. The court, after such final decree, will order and compel payment of such alimony *pendente lite* in arrears anterior to the decree of divorce. *Dawson* v. *Dawson,* 37 Mo. App. 207.

*Mr. R. Ross Perry* and *Mr. R. Ross Perry, Jr.,* for the appellee:

1. The cause was ended by the final decree, which was not appealed from. The order for alimony *pendente lite* being merely auxiliary to the main proceedings, can not be enforced by proceedings in the cause, when the cause itself is ended by a final decree. The principle is similar to that declared in the case of· *McCurley* v. *McCurley,* 60 Md. 185, where the death of one of the parties was held to end all preliminary proceedings in the cause.

2. Alimony *pendente lite* is not allowed as a matter of right. It is within the discretion of the trial court to deny it, or to increase, diminish or annul it. 2 A. & E. Encyc. L. (2d Ed.) 101 and citations; *Bradstreet* v. *Bradstreet,* 6 Mackey, 502. It will not be allowed in the first instance if it appears the suit is without reasonable foundation or is instigated by malice, or if the wife is acting in bad faith or is greatly at fault. *Thompson* v. *Thompson,* 3 Head (Tenn.), 527; *Zeigenfuss* v. *Zeigenfuss,* 21 Mich. 414; *Glasser* v. *Glasser,* 28 N. J. Eq. 22; 2 Bishop on Mar., Div. & Sep., Secs.

936–939. In the District of Columbia the award of alimony *pendente lite* is made discretionary with the court under the terms of section 746, R. S. D. C. It would seem, therefore, that an order of the court denying alimony is a discretionary order, and no more the subject of appeal than an order denying a preliminary injunction or refusing the appointment of a receiver. See, also, *Goldsmith* v. *Goldsmith,* 6 Mich. 284; *Jacobsen* v. *Jacobsen,* 14 Daly, 255.

3. The above citations clearly show that a wife has not the right to receive money for support from her husband, irrespective of her own acts and conduct. Nor, if allowed, does it become absolutely a debt when unpaid. Even if it did, it is not perceived why a court of equity should be obliged to enforce it. But whatever the law may be under the statutes of other jurisdictions, it is a matter of daily experience in our courts to have alimony reduced, even when due and unpaid. *Alexander* v. *Alexander,* 13 App. D. C. 352. Had the court been in possession of the facts disclosed by the testimony in this case it would never have allowed alimony in the first place. Having discovered them in the regular course of the case, it did right to refuse its aid to the appellant. Her conduct placed her without the pale of equity. *O'Haley* v. *O'Haley,* 31 Tex. 502; Pom. Eq. Jur., Secs. 397, 398, 404.

Mr. Justice MORRIS delivered the opinion of the Court:

No testimony was taken or sought to be taken under the present petition and answer, and none seems to have been necessary. The facts to which the appellee referred in his answer as justifying his non-payment were the facts that had already appeared in testimony, and upon which the decree of divorce was based; and although this testimony has been very properly omitted from the record now before us, the tenor of it sufficiently appears from the opinion rendered by the court at the time when the decree of divorce was entered. From this it is shown that the appellant was

guilty of adultery, that her conduct was shameless, that she practiced a gross imposition upon the appellee, that she had suborned witnesses to give perjured testimony in the cause, and that she had no standing in court for relief. This showing is not controverted by the appellant. The contention is that it does not affect the order for the allowance of alimony, that this order was a finality, and that so far as concerns the arrears of alimony which had accrued before the rendition of the decree of divorce, the order was in no way affected by that decree.

The allowance of alimony *pendente lite* is necessarily incidental to the main relief sought in all suits between husband and wife involving the continuance and conduct of the matrimonial relation, whether the proceeding be for a divorce from the bond of matrimony, or for a divorce from bed and board, or for the mere allowance of alimony itself as a permanent relief when the husband has failed or refused to comply with the legal duty incumbent on him of the support and maintenance of his wife. As we all recognize, proceedings of this character are peculiar in the one respect that the husband, whether he be complainant or defendant, may be required by interlocutory order or decree of a court of equity to pay money, such as the court may reasonably allow, to the opposing party, the wife, to enable her to support herself during the pendency of the suit and to defray the expenses of the litigation, when, as we may suppose, the husband would naturally cease or refuse to provide the means for her. And the reason for this peculiarity it is not difficult to find in the peculiar circumstances of the matrimonial relation when thus subjected to the ordeal of legal proceedings.

But alimony *pendente lite* being in all cases merely an incident and *ex vi termini* limited in its duration to the pendency of the proceedings, it necessarily comes to an end whenever the proceedings are finally terminated by decree, whatever be the purport of such decree, and in whosesoever favor it be.

And this conclusion of law is plainly accepted by both parties to this controversy, since no alimony is claimed for any time subsequent to the decree, notwithstanding that the decree itself is wholly silent on the subject.

The final decree in such proceedings, whether in favor of the husband or the wife, and whether it decrees a divorce or refuses it, may make provision for permanent alimony, or may make an allowance in place of alimony; and, if any alimony *pendente lite* remains in arrear and unpaid, the final decree may make provision for its payment. But the decree here was wholly in favor of the husband; it refused to grant the wife's petition for a divorce, and granted that of the husband, and made no provision whatever in regard to alimony of any kind. The question, then, is presented, whether under these circumstances the wife can go back of the final decree and reopen the cause so as to give effect to the interlocutory order for allowance of alimony *pendente lite* for the one month during which alimony was unpaid at the time of the final decree.

We do not think that this can properly be done. The final decree must be regarded as having disposed of the whole cause and of every issue in the cause, whether direct or incidental. This is the purpose of all final decrees and the foundation of the doctrine of *res adjudicata*. Direct issues may often be omitted or reserved from an adjudication; but it would be manifestly improper to go behind a decree to find a purely incidental order, intended only to facilitate the conduct of that suit, and to seek to enforce such incidental or interlocutory order, upon the allegation that it had not been fully executed, when the court must be presumed in its final decree to have refused to execute it.

As we have intimated, it was competent for the present appellant to have asked the court at the time of the final decree to include in that decree some provision for the payment of arrears of alimony, or to have that matter in some way reserved from the operation of the decree, if she thought

that she was entitled to such arrears; but this she did not think proper, or she neglected to do; and it is now too late to disregard the decree and to provide for what was then omitted.

It is true that there is a certain individuality in orders for the allowance of alimony *pendente lite* which seems to distinguish them from other orders of an interlocutory nature; and numerous courts have held them to be final judgments or decrees in the sense that they may be reviewed on appeal. We, ourselves, in the case of *Alexander* v. *Alexander,* 13 App. D. C. 334, have held' that there is a certain element of finality in such orders. In the very full and satisfactory article on Divorce in the fifth volume of the Encyclopedia of Pleading and Practice, the writer states the condition of the authorities on the subject, and reviews several of them in the copious notes annexed to the article. He says:

"It is a controverted question whether an order to the husband to pay temporary alimony or counsel fees is a final order which may be reviewed before a decree is rendered; but the weight of authority is that such order is a final order and in effect a decree. Some well considered opinions hold that such order is an interlocutory order, and, as it does not involve the merits of the case, can not be reviewed except on an appeal from the decree granting or refusing a divorce."

In the consideration of the question we have not found it necessary to go farther than what was said in the case of *Tolman* v. *Tolman,* 1 App. D. C. 299, where the Chief Justice, speaking for the court, said:

"With respect to the amount of such allowance *pendente lite,* that depends largely upon the extent of the *delictum* and the pecuniary circumstances of the husband. It is mainly a matter of discretion in the court below, though a judicial and not an arbitrary discretion. A court of appeals must see clearly that the allowance is excessive before it will interfere to reduce it."

And what was there said about the matter of amount is, of course, equally applicable to the case of a refusal of alimony *pendente lite,* as well as to the general power of allowance.

We think that the precise question now before this court was not involved in any of the cases cited in support of the alleged finality of these orders for the payment of alimony *pendente lite.* In one of the leading cases on the subject, that of *Sharon* v. *Sharon,* 67 Cal. 185, in which it was held that such an order was final in so far as to be appealable to an appellate tribunal before the final decree on the merits of the cause, there was what would appear to us, if the cause arose in this District, a gross abuse of discretion in the allowance of an extravagant amount of alimony and counsel fees in a cause at least doubtful, and which was ultimately held to be wholly without merit on the part of the woman concerned.

In the case of *Dawson* v. *Dawson,* 37 Mo. App. 207, in which an appeal from the final decree took up the whole cause, a divorce was ordered upon condition of the payment by the husband, the party seeking the divorce, of all the arrears of alimony *pendente lite* which had been ordered and which then remained due. It was held that the husband could not escape, as he subsequently sought to do, the performance of the condition upon which he was to have the divorce. This case plainly has no bearing on the controversy now before us, or on the question involved in this controversy.

In the case of *Dinet* v. *Eigenman,* 80 Ill. 274, there was a decree for divorce, and thereafter a decree for the payment of a sum to the wife as alimony. The wife died, having failed to receive several instalments of the alimony allowed; and it was held that the decree for alimony might be enforced in favor of her personal representatives. In the case of *Blake* v. *Blake,* 80 Ill. 523, in the same court, there was an appeal, prior to the final decree, from an order which

sought to enforce the payment of alimony. The case does not differ substantially from that of *Sharon* v. *Sharon, supra.*

In the case of *Harrison* v. *Harrison,* 20 Ala. 629, there was a decree for alimony in favor of the wife in one of the courts of South Carolina. Subsequently, at the suit of the husband, there was a decree for an absolute divorce in Alabama; and thereafter it was sought by the wife in the courts of Alabama to enforce the decree for alimony rendered in South Carolina. It was very properly held that such enforcement was not precluded by the decree for a divorce. The decree in South Carolina was an absolutely final decree, and not an interlocutory order; and plainly it was not affected by the subsequent divorce.

In the case of *W. F. Smith's Estate,* 122 Cal. 462, there was alimony allowed *pendente lite.* The husband died before the cause was brought to a hearing, and consequently before there was any decree, leaving unpaid and in arrear several instalments of the alimony; and it was held that these arrears of alimony could be charged as claims against the husband's estate like other debts. The case of *Sharon* v. *Sharon,* 67 Cal. 185, was referred to in the opinion as establishing for that State the rule that orders for the payment of alimony *pendente lite* were in the nature of final judgments.

On the other hand, in the case of *McCurley* v. *McCurley,* 60 Md. 185, the Court of Appeals of Maryland held that, when, pending a suit by a wife for a divorce *a mensa et thoro,* the husband dies before a final decree, the husband's executor could not be required to become a party to the suit to answer the wife's demand for an additional allowance for counsel fees for services rendered in the cause during the lifetime of the husband; and that the suit itself and all the proceedings identified with it were abated.

But it is very clear that in no one of these cases, or many others that could be cited, was the question involved which is now before us for consideration. Nor does the reasoning in these cases greatly aid us in the discussion. Only two

cases have been cited in which the question was involved, that of *O'Haley* v. *O'Haley*, 31 Tex. 502, and that of *Wright* v. *Wright*, 6 Tex. 19; and in each of those cases the decision was adverse to a claim similar to that set up here by the appellant. These cases were criticised and their authority was rejected by the St. Louis Court of Appeals in the case of *Dawson* v. *Dawson*, 37 Mo. App. 207, heretofore cited; but it is very evident that the Missouri tribunal either failed to read the cases with sufficient consideration, or failed to notice that the questions involved were very different from that with which the court in St. Louis had to deal.

The question before us is not whether a decretal order for alimony *pendente lite* is appealable; or whether proceedings for the enforcement of such an order can be reviewed in an appellate tribunal before final hearing in the trial court on the merits of the suit; or whether, when a suit for divorce has abated by the death of either party before final decree, arrears of alimony unpaid may be enforced against the husband or his estate; or whether a final decree for alimony in one State is merged in an absolute decree for divorce in another State. But the question is, whether, when a cause has been brought to a hearing on the merits, and an absolute decree of divorce has been rendered in favor of the husband and the wife's counter petition for divorce has been dismissed, without any reference whatever to alimony or arrears of alimony, and no provision made for the collection or payment of arrears of alimony, the wife can afterwards, and after the decree has passed beyond the power of correction in the court which rendered it, and beyond the power of review by an appellate tribunal on appeal, go back of that decree and enforce an interlocutory or incidental order for alimony *pendente lite* which remained partially unexecuted at the time of the rendition of the decree. This question we are compelled to answer in the negative. Whatever finality for certain purposes and under certain contingencies may inhere in the interlocutory

orders of a court of equity for the payment of alimony *pendente lite* in suits for divorce, they are after all in the cause in which they were rendered only interlocutory orders incidental to the cause and subject until final hearing to modification, revocation or rescission by the same court. What was said by the Court of Appeals of Maryland in the case already cited of *McCurley* v. *McCurley*, 60 Md. 185, is entirely appropriate here. It said :

" It is well settled that the death of either party to a divorce suit before decree, it being a personal action, abates the divorce proceedings; and this effect must extend to whatever is identified with those proceedings. The allowance of money to pay the wife's counsel fees is in futherance of the procedure to obtain or prevent the divorce. When, therefore, the jurisdiction to pass a decree is ended, no jurisdiction can survive as to matters purely ancillary to that object."

The litigation between the parties in the matter of the divorce sought by both of them was terminated by an absolute and final decree; and upon every principle applicable to such cases we must assume that the final adjudication settled and disposed of the whole controversy between the parties and of everything incidental or ancillary thereto. Any other conclusion would be subversive of the salutary theory of *res adjudicata*. We have intimated how the rights of the appellant, if any she had in the premises, could have been properly reserved or safeguarded ; but no steps were taken for that purpose. We do not think that the final decree can now be modified or overthrown by indirection in order to enforce an interlocutory decretal order, which necessarily became merged in the final decree.

These considerations will serve to dispose of the case before us. But even if we were mistaken in the conclusion reached by us on this point, there is another consideration on which we would have to hold that the court below was right in its refusal of the prayer of the appellant's petition.

It is a maxim of equity that he who seeks the intervention of a court of equity must come in with clean hands. The appellant seeks equitable relief; and the relief asked for is of no less an equitable character because she alleges a final adjudication of right in her favor and now merely seeks an execution of such final adjudication. The application of the maxims of equity does not stop with the adjudication of right; it extends as well to the remedy. And at every or any stage of a cause a court of equity may stay its hand whenever it appears that it would be inequitable to proceed further. The testimony taken in the cause, as summarized in the opinion of the court below upon the final hearing, gives ample reason for the application of the maxim in the present instance and at the present juncture. But this point need not be elaborated further.

From what we have said, it follows, in our opinion, that the order from which the present appeal has been prosecuted should be *affirmed, with costs. And it is so ordered.*